IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARKWANN LEMEL GORDON | : | NO. 99-348-2 |

MEMORANDUM

Bartle, J.                                                                      February 7, 2022

        The court has before it the motion of defendant Markwann Lemel Gordon to reduce his sentence and grant compassionate release under 18 U.S.C. § 3582(c)(1)(A).

I

        On December 13, 1999, a jury convicted Gordon of seven counts of conspiracy to commit bank robbery (18 U.S.C. § 371), seven counts of armed bank robbery (18 U.S.C. § 2113(d)), and seven counts of using and carrying a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)). The seven bank robberies took place in Philadelphia between 1995 and 1997. Gordon was twenty-one years old through twenty-four years old at the time of these offenses.

        At his sentencing on September 29, 2000, Judge Stewart Dalzell, now deceased, sentenced Gordon to 1,688 months. Judge Dalzell had no choice as to Gordon's sentence of 1,500 months for the seven armed robberies under § 924(c) which at that time carried a mandatory term of imprisonment of 5 years, or 60

months, for the first robbery and a mandatory minimum term of 20 years, or 240 months, for each of the 6 additional robberies, all to run consecutively.  Judge Dalzell then imposed on the remaining counts the maximum sentence of 188 months under the sentencing guidelines to run consecutively to the sentences on the § 924(c) counts.  The Court of Appeals affirmed.  See United States v. Gordon, 290 F.3d 539 (3d Cir. 2002).

Gordon is now forty-eight years old and is incarcerated at FCI Coleman in Florida, a medium custody facility.  He has been in custody since 1999 and has served approximately 306 months, including credit for good conduct.  He is effectively serving a life sentence.  During his incarceration, he has completed over 125 courses and 500 hours of educational programming.  He has received numerous certificates in areas such as anger management, victim impact, and behavior modification.  He has been the instructor for multiple courses and has learned to read, write, and understand Spanish.  He has not received a disciplinary violation in over eleven years.

II

Gordon's motion to reduce his sentence relies on 18 U.S.C. § 3582(c)(1)(A) as recently amended by the First Step Act.  That statute provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
>   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction
>     . . .
>
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

Gordon has exhausted his administrative remedies. He now has the burden to establish that he meets the criteria under § 3582(c)(1)(A)(i) to obtain a reduction in sentence. This provision provides that a court may order release for "extraordinary and compelling reasons" but only if the reduction in sentence is "consistent with applicable policy statements of the Sentencing Commission."

Congress has also enacted 28 U.S.C. § 994(t) which limits § 3582(c)(1)(A):

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

Application note 1(A) of section 1B1.13 of the Sentencing Guidelines explains that "extraordinary and compelling reasons" exist where the defendant is: (1) "suffering from a terminal illness" including among others "advanced dementia"; (2) "suffering from a serious physical or medical condition"; (3) "suffering from a serious functional or cognitive impairment"; or (4) "experiencing deteriorating physical or mental health because of the aging process." The latter three grounds also require that the impairment "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

The notes to the Sentencing Guidelines also include reasons related to the age of a defendant who is at least sixty-five years old and reasons related to family circumstances as a basis to reduce a sentence. There is also a catchall

4

provision which states that a sentence may be reduced where "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

Our Court of Appeals has held that this policy statement and its enumerated extraordinary and compelling reasons are not binding on the court but may serve as a guide. See United States v. Andrews, 12 F.4th 255, 259-60 (3d Cir. 2021). The Court has also made clear that the length of a lawfully imposed sentence and nonretroactive changes to sentencing law are not extraordinary and compelling reasons warranting a sentence reduction. Id.

### III

Gordon asserts that changes to the law since his sentencing, the draconian length of the sentence imposed, the threat of COVID-19 to those incarcerated and to his age group, his age at the time of his offenses, and his extensive evidence of rehabilitation constitute extraordinary and compelling reasons that merit a reduction in his sentence.

First, Gordon correctly argues that he would not receive such a harsh sentence were he to be sentenced today. Congress changed the sentencing law in the First Step Act in 2018 so that a defendant will no longer receive a

twenty-five-year mandatory minimum sentence (twenty-year mandatory minimum at the time of Gordon's offense) for each subsequent § 924(c) offense when charged in the same case. See Andrews, 12 F.4th at 257.[1]

Under today's law, a defendant will receive a mandatory minimum of twenty-five years for successive robberies only when he or she already has a final prior conviction under § 924(c). See 18 U.S.C. § 924(c)(1)(C). Otherwise, a defendant will receive on each count a mandatory minimum of five years for using a firearm during a crime of violence, or a mandatory minimum of seven years for brandishing a firearm during a crime of violence. See 18 U.S.C. § 924(c)(1)(A)(i)-(ii). Terms of imprisonment under § 924(c) are still to run consecutively. 18 U.S.C. § 924(c)(1)(D).

Gordon also avers in support of his motion that the government responded punitively by filing a superseding indictment for five additional robberies under § 924(c) when he rejected a plea deal and exercised his right to a jury trial. Gordon claims that this made his sentence decades longer than his co-defendants who pleaded guilty. All of them received lesser sentences and have since been released.

---

1. At the time of Gordon's offenses, the mandatory minimum was twenty years. Congress later increased the mandatory minimum to twenty-five years.

In addition, Gordon contends that the ongoing COVID-19 pandemic, including the highly contagious Omicron variant, warrants his early release. According to Gordon, he suffered severely when he contracted COVID-19 in July 2020 and spent a week in the intensive care unit for low oxygen levels, difficulty breathing, and pneumonia. He continues to experience difficulty breathing. He has worked as an essential worker throughout much of the pandemic, oftentimes for fourteen hours a day for seven days a week. Gordon includes data from the Centers for Disease Control and Prevention ("CDC") which states that those aged forty-five to fifty-four have an increased risk of serious COVID-19 than those younger. Gordon points to the surge of cases in prisons as a result of the Omicron variant and the diminished effectiveness of vaccines at preventing infection from COVID-19.

Gordon also relies on the fact that he was twenty-one years old when he committed his first robbery in 1995 and that his age at the time of these offenses is uncommon. He cites statistics from the United States Sentencing Commission that found that three percent of offenders were less than twenty-one years old in 2019 and argues that young age enhances rehabilitation.

Finally, Gordon stresses his exemplary record while in prison as an extraordinary and compelling reason to reduce his

7

sentence.  As previously stated, he has not had a single violation in over eleven years and has been moved to a medium custody facility.  He has completed 125 courses, over 500 hours of educational programming, has numerous certificates, has led and instructed courses, and has learned Spanish.

He cites letters from Judge Dalzell who sentenced him.  He wrote to Judge Dalzell in November 2012 to express remorse for his actions.  In his response in December 2012, Judge Dalzell stated that Gordon's letter was "so sensitive and self-aware but most of all it is so positive about making the most of your life even under such difficult conditions."  Judge Dalzell remarked that he had never received such a letter in over twenty years on the bench and that "your letter gives the lie to the old cliché that a leopard can never change his spots.  You have, and you've done so dazzling."  Gordon and Judge Dalzell continued to correspond during the following years prior to Judge Dalzell's death.

Gordon also includes letters of high praise from the FBI agent on his case, corrections officers at FCI Coleman, and other BOP employees.  He avers that he has written victim impact letters taking responsibility for his crimes and acknowledging the trauma he inflicted on others.

The Government concedes that Gordon's sentence would be shorter today due to changes in sentencing law with the

8

passage of the First Step Act. Gordon did not have a previous final conviction under § 924(c) before he was charged with the seven armed robberies in this case and therefore would not have been subject to mandatory twenty-year sentences on six subsequent counts.

However, the Government points out that he would still face a lengthy sentence if sentenced today since the First Step Act did not change the fact that using a firearm during a crime of violence carries a mandatory minimum of five years, to run consecutively, and seven years if the firearm is brandished. See 18 U.S.C. § 924(c)(1)(A). Thus, Judge Dalzell would have been compelled to sentence Gordon to consecutive mandatory minimum terms of five years on each of the seven counts of armed robbery, that is to 420 months. With the consecutive 188 months on the remaining counts, his total sentence would have been at least 608 months.[2] So far, Gordon has only served approximately 306 months.

Furthermore, the Government relies on the recent decision of our Court of Appeals in United States v. Andrews. As noted above, it holds that a sentence that was lawful when imposed is not an extraordinary and compelling reason to merit a reduction in sentence. In that case, the Court explained that

---

2.  The court for present purposes assumes that each successive robbery sentence would have been for five years, not seven.

"[t]he duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance" and that "considering the length of a statutorily mandated sentence as a reason for modifying a sentence would infringe on Congress's authority to set penalties." Id. at 260-61.

Gordon's sentence of 1,688 months was lawful when imposed. Furthermore, as was the case in Andrews, Gordon has not presented any evidence that the Government abused its discretion when it filed a superseding indictment and charged him for the additional robberies. See id. at 262. This court is therefore precluded from finding that Gordon's sentence is an extraordinary and compelling reason as is required for compassionate release under § 3582(c)(1)(A).

The changes to § 924(c) in the First Step Act were not made retroactive. While the sentencing landscape has markedly changed since he was sentenced in 2000, Andrews held that "nonretroactive changes to the § 924(c) mandatory minimums [] cannot be a basis for compassionate release. In passing the First Step Act, Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced." Id. at 261. The Court concluded that it "will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release." Id. The fact that Gordon would have

10

been given a lesser total sentence today is simply not an extraordinary and compelling reason for a reduction in sentence and compassionate release.[3]

The Government likewise argues that Gordon's other factors do not constitute extraordinary and compelling reasons. As relates to the COVID-19 pandemic, the Government notes that Gordon received two doses of the Pfizer vaccine in April 2021, received a booster shot in November 2021, and does not have any underlying conditions that put him at a heightened risk of a severe outcome of COVID-19. While the Omicron variant has led to a surge of cases in prisons, it has also led to a surge of cases everywhere and the Pfizer vaccine, particularly with a booster shot, is still highly effective at preventing serious cases and hospitalizations or death.

The Bureau of Prisons has in place protocols to deal with this disease, including vaccinations and boosters, and the Attorney General has issued multiple directives to the Bureau of Prisons concerning early release of inmates. Vaccines may not have had the same effectiveness at preventing infection of the

---

3.  We note that our Court of Appeals stated in Andrews that "[i]f a prisoner successfully shows extraordinary and compelling circumstances, the current sentencing landscape may be a legitimate consideration for courts at the next step of the analysis when they weigh the § 3553(a) factors." Andrews, 12 F.4th at 262. However, the court cannot reach this next step because Gordon has not presented an extraordinary and compelling reason for a reduction in sentence.

Omicron variant as with other variants, but they still remain highly effective at preventing hospitalization and death.

The court is, of course, mindful of the devastating worldwide pandemic and the special dangers the highly contagious coronavirus, including its Omicron variant, poses for Gordon and all others in prison.  Nonetheless, the COVID-19 pandemic does not warrant the release of every federal prisoner.  See e.g., United States v. Roeder, 807 F. App'x 157, 160-61 (3d Cir. 2020).

Gordon does not identify any underlying medical condition or provide any medical records of such to the court. The court acknowledges that the CDC has found that as age increases, the risk for more serious cases of COVID-19 increases.  The CDC reports that the risk for serious COVID-19 greatly increases for those 65 and older and is most serious for those 85 and older.  Gordon is not in these age groups.

The court recognizes that Gordon has already had a serious bout of COVID-19.  Since that time, he has been vaccinated with two doses of the Pfizer vaccine and has been boosted.  Now that he is vaccinated, he has failed to show he is at any greater threat of contracting COVID-19 in his current situation than the general public.  See e.g., United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The Government further maintains that Gordon's age of between twenty-one and twenty-four at the time of the underlying offenses is not an extraordinary and compelling reason for compassionate release.  The Government cites the district court in Andrews which our Court of Appeals subsequently upheld.  See 480 F. Supp. 3d 669, 687 (E.D. Pa. 2020).

The defendant in Andrews was nineteen at the time of the offense.  The district court found that "[o]nly three percent of all federal offenders were less than twenty-one years old in 2019" according to the Sentencing Commission, so the defendant's age was "beyond what is common, i.e., extraordinary."  Id.  But the court also found that age, even with rehabilitation, was not enough for compassionate release and explained that it was "not aware of any cases where young age at the time of offense and rehabilitation were found to be both extraordinary and compelling to warrant granting compassionate release without other reasons to support it."  Id.

In this case, Gordon was twenty-one when he committed his first robbery charged in this matter, not nineteen, and twenty-four when he committed his last of the seven armed robberies.  His age at the time of the offenses is not a significant reason to reduce his sentence.

Finally, the Government maintains that Gordon's rehabilitation, "while impressive," is not an extraordinary and

13

compelling reason for a reduction in sentence.  The Government rightly states that Gordon's rehabilitation is impressive.  The court commends him on his singular efforts and accomplishments to correct his behavior and acknowledge the impact of his crimes on others.  He is clearly a role model for all those who are incarcerated.  While, as Judge Dalzell noted, Gordon is to be lauded for his transformation, Congress has made clear that "rehabilitation . . . alone shall not be considered an extraordinary and compelling reason" for a reduction in his sentence.  28 U.S.C. § 994(t).

As previously discussed, the other reasons for compassionate release that Gordon offers in addition to rehabilitation – changes in the law since his sentencing, the draconian length of his sentence, the threat of COVID-19, and his age at the time of offense – are not sufficient for a finding of an extraordinary and compelling reason warranting reduction in sentence.  Our Court of Appeals gives district courts "considerable discretion" but within limits in compassionate release cases.  See Andrews, 12 F.4th at 262.  The court simply cannot grant compassionate release based on a reason that has been specifically forbidden.  Absent a permitted reason to support his impressive rehabilitation, the court cannot reduce Gordon's sentence and release him from custody.

14

IV

If a defendant establishes an extraordinary and compelling reason for a reduction in sentence the court must then consider under § 3582(c)(1)(A) the factors under 18 U.S.C. § 3553(a) when deciding whether to grant compassionate release. These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and "the kinds of sentences available." See 18 U.S.C. § 3553(a).

Since Gordon has not been able to first establish an extraordinary and compelling reason for release, the court need not reach the § 3553(a) factors.

V

The court has rarely seen a case as compelling as this for a defendant's release from prison. It appears that Gordon has been totally rehabilitated. Nonetheless, even if the First Step Act had been in place when Judge Dalzell sentenced him in 2000, he would still have received a sentence of at least 608 months. He has now served only about 306 months of that time. This court's hands are tied. Gordon has come to the wrong place

15

for relief.  Any remedy lies with Presidential clemency, other executive action, or further change in the law by Congress.

The motion of Markwann Lemel Gordon to reduce his sentence and grant compassionate release under 18 U.S.C. § 3582(c)(1)(A) regrettably will be denied.